UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ADELAIDA AGOSTO,

                    Plaintiff,

         - against -                 **MEMORANDUM & ORDER**
                                               20-CV-5640 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Presently before the Court in this action, where Plaintiff Adelaida Agosto seeks judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkts. 14, 18.) For the foregoing reasons, the Court grants Plaintiff's motion, denies the Commissioner of Social Security's ("Commissioner") motion, and remands this case.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff is 52-year-old resident of Brooklyn, who until 2016 worked as a medication delivery person. (Tr. 45–46.)[1] Until 2014, Plaintiff suffered from "morbid obesity." (Tr. 1107.) In October 2014, Plaintiff underwent bariatric surgery to aid her in losing weight. (Tr. 343–44, 1099, 1112.) After the surgery, Plaintiff lost between 200 to 300 pounds (Tr. 49–52, 1161), but developed other physical and mental limitations. (Tr. 344, 922, 992 (indicating that Plaintiff "underwent gastric sleeve surgery many years ago and lost over 200 pounds[,] . . . [but]

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

following that procedure [has been] experiencing multiple psychiatric and neurological conditions.").)

Between 2016 and 2018, Plaintiff visited the emergency room at least four times, and other doctors multiple times, to investigate these mental and physical health complaints.  In April 2016, Plaintiff called emergency services after feeling weak at her workplace.  (Tr. 344, 399, 1072.)[2]  On June 2, 2016, Plaintiff sought psychiatric treatment and reported "depression, decreased energy, and a feeling of hopelessness."  (Tr. 344.)  She also reported that, months earlier, an unknown person had robbed her in her workplace, and another unknown person had hit her with his car.  (*Id*.)  Five days later, Plaintiff again sought medical help and reported feeling unwell for two weeks, and a doctor diagnosed her with, *inter alia*, "severe malnutrition." (Tr. 306.)  A month later, on July 21, 2016, Plaintiff was hospitalized after arriving to an emergency room in Brooklyn and stating that she wanted "to kill [her]self," intended to cut her wrists, and reported hearing voices.  (Tr. 358–59, 365.)  Dr. Victor Kwong, M.D., a psychiatrist, discharged Plaintiff a week later, after diagnosing her with "acute" major depressive disorder without psychotic features and prescribing her two psychiatric medications.  (Tr. 388, 392.)  On October 25, 2016, John Nikkah, Ph.D., a psychologist, diagnosed Plaintiff with major depression.  (Tr. 402.)  He further concluded that Plaintiff had marked limitations in performing simple and complex tasks independently, making decisions, relating adequately with others, and dealing appropriately with stress.  (Tr. 401–02.)   In 2017, Plaintiff's family brought her to the hospital due to her complaints of "severe weight loss," and her list of diagnoses now included depression, PTSD, bipolar disorder, and vertigo.  (Tr. 1161, 1167–68.)   In the same year,

---

[2] Plaintiff was fired from that job soon thereafter.  (Tr. 344, 399.)

Plaintiff met with multiple doctors regarding possible seizures. (Tr. 556–60, 992.) Doctors again noted that Plaintiff was "extremely underweight." (Tr. 992.)

Plaintiff's physical health similarly declined during this period. In May 2016, Plaintiff was diagnosed with bilateral hearing loss, bilateral otosclerosis, and tinnitus. (Tr. 719–20.) On October 11, 2016, Dr. John Fkiaras, M.D., a family doctor, examined Plaintiff and diagnosed her with decreased hearing in her left ear, migraines, dizziness, low-back pain, and a history of fainting. (Tr. 394–96.) In November 2016, Plaintiff suffered moderate to severe asymmetrical sensorineural[3] hearing loss and was prescribed hearing aids. (Tr. 957, 712.) But, by 2018, Plaintiff's diagnosis had developed into "stable persistent hearing loss." (*Id.*) On October 19, 2017, Robert Chaney, P.A., reported that Plaintiff had fallen off of the toilet, which resulted in low back and spine pain, known as coccyx pain. (Tr. 976.) In 2018, Plaintiff's primary care physician Dr. Kyu-Han Kim, D.O., opined that Plaintiff had temporary limitations beginning on March 21, 2018, which were expected to last more than seven months, and necessitating assistance with ambulating, getting dressed, washing, bathing, and preparing meals. (Tr. 755.) Dr. Kim concluded that Plaintiff could not be left alone. (*Id.*)

On July 15, 2016, Plaintiff protectively filed for DIB and claimed that since April 1, 2016—when she first sought emergency care—she had suffered from depression, deafness in her left ear, and irritable-bowl syndrome that had rendered her disabled. (Tr. 22, 186.) The SSA initially denied the claim on December 1, 2016. (Tr. 22.) On February 13, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) ALJ Louis Bonsangue held a hearing on February 6, 2019, and issued a decision denying Plaintiff's claims on June 3,

---

[3] Sensorineural means "relating to, or involving the aspects of sense perception mediated by nerves." *Sensorineural*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sensorineural (last visited Sept. 25, 2022).

2019.  (Tr. 22, 32.)    Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on August 19, 2020, making the ALJ's decision final. (Tr. 1-3.)   Plaintiff

commenced this action on November 19, 2020.[4]  (*See* Dkt. 1.)

## II.    The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The plaintiff

bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden

at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[5]  First,

the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."

20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer

is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a

severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limits

[the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the

plaintiff does not suffer from an impairment or combination of impairments that is severe, then

the plaintiff is not disabled.  *Id.* § 416.920(a)(4)(ii).  But if the plaintiff does suffer from an

impairment or combination of impairments that is severe, then the ALJ proceeds to the third step

---

[4] Although this action was filed 87 days after the presumptive receipt date of the Appeals Council's denial of review, *see* 42 U.S.C. § 405(g) (setting a 60-day limit to file civil action seeking review of an SSA final decision); 20 C.F.R. §§ 404.981, 422.210(c) (determining that a final decision is presumed received five days after it is dated unless the applicant makes a reasonable showing to the contrary),  the Commissioner explains in its cross-motion that "[t]he Appeals Council retroactively granted an extension of time to Plaintiff to file this civil action until November 19, 2020, the date she filed her Complaint in this Court. Therefore, the Commissioner does not contest the timeliness of this action."  (Dkt. 18, at 1, n.2.)  The Court accordingly finds this action to be timely.

[5] Some of the cases cited herein involve supplemental security income ("SSI") regulations, while this case involves DIB, but the DIB and SSI regulations are "virtually identical."  *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020).  The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Social Security Act.  *Id.* § 416.920(a)(4)(iii).  On the other hand, if the plaintiff does not have a such an impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.* § 416.920(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled.  *Id.*  Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy.  *Id.* § 416.920(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 26, 2016.  (Tr. 24.)  At step two, the ALJ determined that Plaintiff suffered from bilateral hearing loss, tinnitus, lumbago, depression, anxiety, and post-traumatic stress disorder ("PTSD"), all of which qualified as severe impairments.  (*Id.*)  The ALJ did not discuss any other diagnoses Plaintiff had received.  (*Id.*)  At step three, the ALJ determined that Plaintiff's impairments, both individually and in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (*Id.*)  In reaching this determination, the ALJ considered Listing 2.10 ("Hearing loss not treated with cochlear implantation") and concluded that medical reports showed that Plaintiff's "bilateral loss was successfully treated."  (*Id.*)  Likewise, the ALJ considered Listings 12.04, 12.06, and 12.15 ("Mental Disorders – Adult"), and concluded that Plaintiff lacked two "marked limitations" or "one extreme limitation" to satisfy "Paragraph B," and that the evidence did not satisfy "Paragraph C."  (Tr. 24–26.)  Having determined that Plaintiff's impairments did not meet or medically equal any of the impairments in the Listings, the ALJ determined Plaintiff's RFC, finding that Plaintiff was able to perform the "full range of light work as defined in 20 C.F.R. § 404.967(b)."[6]  (Tr. 26.)

At step four, the ALJ determined that Plaintiff's symptoms did not prevent her from performing her past relevant work as a medication delivery person.  (Tr. 26–30.)  In the alternative, under step five, the ALJ found that, based on the vocational expert's testimony and Plaintiff's RFC and background, Plaintiff could perform unskilled light occupations of office cleaner, price marker, and electronics sub-assembler.  (Tr. 31, 56, 59.)  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 32.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. § 405(g).  However, in reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. § 416.967(b).

supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (2d Cir. 2012) (quotation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (quotation omitted).  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  *See* 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Courts in this Circuit have recognized at least five grounds for which the district court could remand a social security determination to the agency for further consideration.  First, the ALJ has an affirmative duty to "develop the record in light of the essentially non-adversarial nature of a benefit proceeding."  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (citation omitted); *see also* 42 U.S.C. § 423(d)(5)(B) (noting that the Commissioner must "develop a complete medical history of at least the preceding twelve months for any case"); *Decker v. Harris*, 647 F.2d 291, 293–94, 299 (2d Cir. 1981) (noting that although an applicant bears the burden to place his disability at issue, the ALJ has the "affirmative duty to inquire into all the matters at issue[.]" (citation omitted)).  Once an applicant submits documents placing her

disability at issue, the ALJ has an independent duty fill obvious gaps in the record, obtain up-to-date documents in lieu of relying on stale ones, and make all reasonable attempts to obtain medical opinions. *See Thomas v. Comm'r of Soc. Sec.*, No. 20-CV-5086 (PKC), 2022 WL 523544, at *7–8 (E.D.N.Y. Feb. 22, 2022) (remanding for failure to obtain medical opinion and for obvious gaps in the record)*; Caban v. Comm'r of Soc. Se*c., No. 18-CV-929 (PKC), 2019 WL 4254000, at *4–5 (E.D.N.Y. Sept. 9, 2019) (remanding for failure "to solicit updated and current medical opinions . . . following the progression of [plaintiff's] symptoms after her February 2015 surgery").  Second, in line with her obligation to obtain medical data, the ALJ is "not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps[.]" *Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282 (E.D.N.Y. Jan. 2, 2018) (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010)).  Third, having developed the record, the ALJ must consider all of the evidence before her.  *See Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) ("[F]ailure to acknowledge relevant evidence or to explain its implicit rejection is plain error." (citation omitted)); *DeGraff v. Comm'r of Soc. Sec.*, 850 F. App'x 130, 132 (2d Cir. 2021) (remanding because the "ALJ did not consider the records [submitted to her.]").  Specifically, the ALJ must consider the record holistically and may not selectively rely on favorable portions of the record while ignoring others.  *See Hernandez v. Comm'r of Soc. Sec.*, No. 20-CV-5760 (PKC), 2022 WL 604005, at *6–7 (E.D.N.Y. Mar. 1, 2022) (remanding in part where "the ALJ relied on a single data point, thereby impermissibly "cherry-picking" medical evidence that supported his conclusion.").  Fourth, the ALJ must fully explain her reasoning to allow the Court to engage in meaningful judicial review.  *See Klemens*, 703 F. App'x at 36 ("Among the ALJ's legal obligations is the duty to adequately explain his reasoning" (citation omitted)); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where [the court is]

unable to fathom the ALJ's rationale in relation to the evidence in the record[.]"). Fifth, the ALJ must correctly apply the relevant legal standard in reaching her decisions. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) ("Failure to apply the correct legal standards is grounds for reversal." (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984))).

Here, Plaintiff argues that the ALJ: (1) failed to develop the record with respect to her weight-loss, (2) improperly 'played doctor' instead of developing the record with respect to her back-pain, (3) failed to consider evidence of her impairments, and (4) made findings that, as a whole, were not supported by substantial evidence. (*See generally* Dkt. 15.)  The Court addresses these arguments in turn.

## I.      The ALJ's Failure to Develop the Record

The ALJ ignored an obvious gap in the record when failing to seek evidence about Plaintiff's severe malnutrition, which her doctors often noted but never fully explained. *See Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 645 (2d Cir. 2020) ("When there is an obvious or clear gap in the record, the ALJ is required to seek out missing medical records, even when a party is represented by counsel." (cleaned up)); *Dale v. Comm'r of Soc. Sec.*, No. 20-CV-07011 (EAW), 2022 WL 4376221, at *4 (W.D.N.Y. Sept. 22, 2022) (remanding when "despite [] clear documentation of [p]laintiff's ongoing issues . . . during the relevant time period, the ALJ asked [p]laintiff no questions about this impairment or its current status whatsoever during the hearing.").  As late as 2018, Plaintiff visited the emergency room because of her malnourishment (Tr. 1064), and in her testimony before the ALJ, Plaintiff described her dramatic weight-loss (Tr. 52).  In relevant part, the SSA's regulations say that a symptom, such as weight-loss, may be considered an "impairment" if it arises from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic

techniques." 20 C.F.R. § 404.1521. As doctors never explained the reason for Plaintiff's weight-loss, which may have been caused in whole or in part by her many medical conditions, the ALJ ignored an obvious gap in the record before him. This was error.

Because Plaintiff filed her claim before March 27, 2017, the "treating physician rule" applies to her case, and the ALJ erred by failing to obtain the opinion of Plaintiff's treating physician.[7] Although the need to obtain an opinion is neither an inexorable command nor an irremediable infraction if the record otherwise "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), the record here does not contain such evidence. The only opinion in the record from a treating source comes from Dr. Harry Pantelides, M.D., an otolaryngologist. (Tr. 997.) Dr. Pantelides' opinion was rendered in 2019, spans one paragraph, limits itself to Plaintiff's hearing impairment, and merely concludes that with "hearing aids [the patient] is expected to be able to function well[.]" *Id.* The ALJ also relied on the opinions of Dr. Fkiaras, a consultant who examined Plaintiff once in October 2016, and Dr. Nikkah, a psychologist who examined Plaintiff once in the same month. (Tr. 28–29.) The ALJ gave Dr. Fkiaras' opinion "partial weight," and Dr. Nikkah's opinion "less weight." (*Id.*) Notably, even these one-time examinations suggested health issues that could have been related to Plaintiff's malnutrition. (Tr. 394–96 (Dr. Fkiaras diagnosing Plaintiff with decreased hearing in her left ear, migraines, dizziness, low-back pain, and a history of fainting); Tr. 402 (Dr. Nikkah diagnosing Plaintiff with major depression).) The ALJ also relied on medical notes and laboratory tests found in the record. This evidence was insufficient to allow the ALJ to proceed without obtaining the

---

[7] "The current version of the [Act]'s regulations eliminates the treating physician rule," but the rule nevertheless applies here, as the current regulations only "apply to cases filed on or after March 27, 2017" *Katz*, 2020 WL 5820146, at *4 n.7 (citations omitted), and Plaintiff protectively filed her claim on July 15, 2016.

opinion of Plaintiff's primary treating source, Dr. Kim, especially where more investigation into Plaintiff's malnutrition was plainly needed.  *See Hernandez*, 2022 WL 604005, at *4 ("[T]he lack of treatment notes . . ., coupled with an absence of any treating source's opinion, reveals a critical and obvious gap in [p]laintiff's medical history that requires further development.").

Remand is also required because the ALJ, in lieu of filling the gaps in the record, "played doctor" and substituted his opinion for that of the medical experts with respect to Plaintiff's back problems.  (Tr. 27.)  The ALJ detected an inconsistency in the record when noting that in 2016, when Dr. Fkiaras examined Plaintiff, the "findings were essentially normal," but in 2017, Robert Chaney, P.A., diagnosed Plaintiff with coccyx pain after she fell from the toilet.  (Tr. 27.)  The ALJ dismissed the indications of coccyx pain based on his view that the records showed that Plaintiff "was treated conservatively."  (*Id.*)  This was error.  *See Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at *8 (E.D.N.Y. Feb. 24, 2022) ("[T]he ALJ's determination that Plaintiff's treatment was "conservative" was an impermissible substitution of his opinion for that of medical experts"); *Aponte v. Comm'r of Soc. Sec.*, No. 20-CV-4150 (FB), 2022 WL 2484241, at *1 (E.D.N.Y. July 6, 2022) ("The ALJ is a layperson, not a medical doctor.  Therefore, she is neither capable of nor permitted to interpret or judge the validity of raw medical data in determining a plaintiff's residual functional capacity").

Although Plaintiff does not raise this issue, the ALJ similarly erred by not obtaining updated opinions regarding Plaintiff's mental health limitations.  The ALJ relied on stale, outdated records that pre-dated Plaintiff's July 2016 hospitalization for hearing voices and threatening to kill herself, to conclude in his June 2019 decision that Plaintiff "had normal thought content and thought processing."  (Tr. 30.)  The record before the ALJ contained Dr. Kwong's July 2016 diagnosis of Plaintiff with "acute major depressive disorder without

psychotic features," and Dr. Nikkah's October 2016 finding to the same effect, noting Plaintiff's various "marked limitations." These contradictory accounts created a gap in the record as to Plaintiff's actual mental health limitations and abilities. The ALJ erred by failing to solicit up-to-date opinions about Plaintiff's mental health, thereby, leaving an obvious gap unfilled. *See Adeyemi v. Comm'r of Soc. Sec.*, No. 20-CV-3386 (MKB), 2022 WL 4134118, at *7 (E.D.N.Y. Sept. 12, 2022) (noting that the "lack of functional assessments from Plaintiff's providers after [2016], constitutes an evidentiary gap in the record warranting remand for further development" and concluding that "[t]he ALJ failed to develop the record [by not soliciting up-to-date notes]" when making his decision in 2019).

## II.   The ALJ's Failure to Evaluate Impairments

Plaintiff argues that the ALJ erred when failing to consider all of Plaintiff's diagnoses in step two of his analysis. (Dkt. 15, at 24–25.) The Court agrees. At step two of his analysis, the ALJ determined that Plaintiff had six "severe" impairments: "bilateral hearing loss, tinnitus, lumbago, depression, anxiety, and [PTSD]." (Tr. 24.) However, Plaintiff submitted evidence that her diagnoses included "bipolar disorder," vertigo," "migraines," and "arterial stenosis." (Tr. 521, 819, 1161.) Further, Plaintiff's symptoms included "memory loss," and her doctors repeatedly noted that she suffered from "severe malnutrition." (Tr. 331, 562.) By failing to consider these impairments, the ALJ ignored the evidence before him, and to the extent his silence was an implicit finding of non-severity, failed to explain his reasoning. *See Klemens*, 703 F. App'x at 36 ("[F]ailure to acknowledge relevant evidence or to explain its implicit rejection is plain error."). The Commissioner responds that the ALJ considered the migraines and memory loss at stage four of his analysis, thereby rendering any failure on his part harmless error. (Dkt. 18-1, at 23.) The Commissioner is correct that where "an ALJ excludes certain impairments

12

from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." *Fontanez v. Colvin*, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *15 (E.D.N.Y. Sept. 28, 2017) (collecting cases).  However, here, as the ALJ only considered two of the impairments he had omitted at step two—namely migraines and memory loss—later in his analysis, Defendant's argument fails.  (Tr. 27–32.)  The Commissioner next argues that Plaintiff's weight-loss was not a medically determinable impairment within the meaning of 20 C.F.R. § 404.1521, and therefore the ALJ was correct as a matter of law to ignore it.  (Dkt. 18-1, at 23.)  The ALJ did not provide that rationale in his decision, and the Court will not entertain the agency's *ex-post-facto* rationalizations of its actions.  *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[The Court may not] properly affirm an administrative action on grounds different from those considered by the agency" (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))); *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 81 (2d Cir. 2006) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))); *Barbera v. Barnhart*, 151 F. App'x 31, 33 (2d Cir. 2005) ("[W]hether or not this would be a valid reason for [the decision], it was not the reason that the ALJ gave." (citation omitted)).  Furthermore, as previously noted, Plaintiff was diagnosed with "severe malnutrition," not simply weight loss, which the ALJ had a duty to investigate and consider.  In sum, the ALJ's failure to consider all of Plaintiff's diagnoses at step two of his analysis justifies remand.[8]

---

[8] Because the Court finds that the ALJ failed to develop the record, the Court need not, and largely cannot, resolve Plaintiff's argument that these findings by the ALJ were not supported by substantial evidence: (1) Plaintiff's impairments failed to meet Listing 12.04; (2)

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.  The Commissioner's decision is vacated and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case and enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 29, 2022
        Brooklyn, New York

---

Plaintiff's impairments failed to meet List 12.02; and (3) Plaintiff had residual capacity to perform unskilled light occupations of office cleaner, price marker, and electronics sub-assembler.  (Dkt. 15, at 24–28.)  *See Adeyemi*, 2022 WL 4134118, at *8 ("[W]hen the ALJ fails to develop the record, the court need not—indeed, cannot—reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." (cleaned up)); *Torres v. Comm'r of Soc. Sec.*, No. 13 CIV. 730 (KBF), 2014 WL 406933, at *6 (S.D.N.Y. Feb. 3, 2014) ("Without a fully developed record, however, an ALJ's decision to deny a claimant['s] benefits is not supported by substantial evidence." (cleaned up)); *Baez v. Comm'r of Soc. Sec.*, No. 17-CV-3595 (MKB), 2018 WL 4688951, at *9 (E.D.N.Y. Sept. 28, 2018) ("[W]here an ALJ fails to adequately develop the record [], the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence."); *Miraglia v. Comm'r of Soc. Sec.*, No. 20-CV-1964 (EK), 2022 WL 1556409, at *4 (E.D.N.Y. May 17, 2022) ("Because the ALJ's failure to develop the record is a threshold issue that impacts other aspects of the disability claim, the Court need not address [plaintiff's] remaining arguments . . . [as] the ALJ's analysis may change on these points upon remand." (cleaned up)).

14